65231. PROGRESSIVE CASUALTY INSURANCE COMPANY
v. AVERY et al.

CARLEY, Judge.

Appellee-plaintiff's motor home and the personal property therein were totally destroyed by fire. The motor home was insured by a policy issued by appellant-defendant. Appellee made demand on appellant for payment of benefits under the policy. Payment was not forthcoming within sixty days because appellant adopted the position that, according to the result of its investigation, the fire was the result of arson and not of an accident. Appellee then instituted the instant action, seeking to recover the benefits under the policy plus bad faith penalties and attorney's fees pursuant to OCGA § 33-4-6 (Code Ann. § 56-1206). At all stages of the litigation, appellant's defense continued to be that the fire was the result of arson. The case was submitted to a jury and a verdict was returned which found appellant liable to appellee under both the policy and OCGA § 33-4-6 (Code Ann. § 56-1206). Judgment was entered on the verdict and appellant appeals.

1. In related enumerations of error appellant attacks the sufficiency of the evidence to support the award to appellee of bad faith penalties and attorney's fees.

"In an action to recover penalties and attorney's fees for the refusal of an insurer to pay a claim it must be shown that the refusal was in 'bad faith,' [OCGA § 33-4-6 (Code Ann. § 56-1206)] (Ga. L. 1960, pp. 289, 502; 1962, p. 712), and the burden is on the insured to show that such refusal was made in bad faith. [Cits.] 'Bad faith' . . . means 'any frivolous and unfounded refusal in law or in fact to

comply with the demand of the policyholder to pay according to the terms of the policy.' [Cits.] The provision for damages and attorney's fees, being in the nature of a penalty, must be strictly construed, and in order for a recovery of such items to be had it must appear from the evidence that the company in bad faith refused to pay the claim within 60 days after a demand had been made. [Cit.] 'The recovery provided in [OCGA § 33-4-6 (Code Ann. § 56-1206)] is a penalty. Penalties and forfeitures are not favored. The right to such recovery must be clearly shown.' [Cit.]" *Interstate Life &c. Co. v. Williamson,* 220 Ga. 323, 324-325 (138 SE2d 668) (1964).

The instant case is not one in which the insurer offered no defense whatsoever as to its liability on the policy. Compare *Key Life Ins. Co. v. Mitchell,* 129 Ga. App. 192, 194 (4) (198 SE2d 919) (1973). Appellant's refusal to pay in the instant case was initially and at all times up to and including trial predicated solely upon the contention that the fire which destroyed appellee's property was the result of arson and not of an accident. Under the clear terms of the policy, arson would be a viable defense to appellant's liability. Thus, the question in the instant case becomes whether, considering " 'the whole complexion of the case as presented to the jury' [Cits.]" *North British & Mercantile Ins. Co. v. Mercer,* 90 Ga. App. 143, 146 (82 SE2d 41) (1954), there was any evidence which would authorize a finding that appellant's reliance upon the arson defense was a "bad faith" frivolous and unfounded refusal "in fact" to comply with appellee's demand for payment under the policy. See generally *Colonial Life &c. Co. v. McClain,* 150 Ga. App. 883 (258 SE2d 655) (1979). "[T]he judgment should be affirmed if there is any evidence to support it ..." *Colonial Life &c. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745) (1979).

Appellee does not contend that appellant's refusal to pay his claim in reliance upon the arson defense was based upon a total failure to investigate the facts and circumstances surrounding the fire. See generally *Central Mfrs. Mut. Ins. Co. v. Graham,* 24 Ga. App. 199 (99 SE 434) (1919). Rather, appellee contends that appellant's arson defense was premised upon a too narrow base, as it relied solely upon the findings of its own experts which showed arson and failed to consider additional evidence which appellant could have procured by interviewing three certain witnesses to the actual fire, including a police officer and the fire chief. Apparently, during the course of its investigation of the fire, appellant had secured the written incident reports of the officer and of the fire chief but had not, prior to the litigation, interviewed them or another lay witness to the fire who was not a resident of Georgia. It is the evidence of these witnesses and appellant's failure to secure that evidence during the investigation

through personal interviews which appellee first asserts would authorize a finding that the refusal to pay based upon the arson defense was frivolous and unfounded.

The three witnesses who were not personally interviewed by appellant prior to its refusal of the demand for payment did testify at the trial. Their testimony negatived the possibility of arson only to the extent that it was consistent with or at least not inconsistent with appellee's own version of the accidental origin of the fire. Apparently, the testimony of the officer and fire chief was more elaborative of but consistent with their written reports which appellant did have prior to the refusal of appellee's demand for payment. Under the holding in *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 756 (12 SE 18) (1890), evidence merely corroborative of appellee's version of the accidental origin of the fire would go only to appellant's "Ultimate liability on the policy . . . but not the 'faith' with which [it] refused to pay [appellee's] demand." *Ga. Intl. Life Ins. Co. v. Harden,* 158 Ga. App. 450, 454 (280 SE2d 863) (1981). Appellant's "duty to pay, without delay or resistance, would arise out of the fact of accidental [fire] and the reception of sufficient preliminary proofs, and *that duty could not be made more obligatory by any additional information volunteered by the plaintiff before or after suit.* In refusing payment after due demand according to the statute, the company would act at its peril, *a peril neither increased nor diminished by the amount of information it might have or obtain,* but only by the weakness or strength of its defence as manifested at the trial . . ." (Emphasis supplied.) *Travelers Ins. Co. v. Sheppard,* supra, 765. See also *Interstate Life &c. Co. v. Williamson,* supra, 325.

Accordingly, the testimony of the witnesses to the fire in the instant case — while corroborative of appellant's ultimate liability on the policy — did not demonstrate that, in its absence, appellant's reliance upon the arson defense in the instant case, as evidenced at trial by the unequivocal but unaccepted testimony of experts, had been undertaken without reasonable or probable cause. See *First of Ga. Ins. Co. v. Worthington,* 165 Ga. App. 303 (4) (299 SE2d 567) (1983). Compare *Colonial Life &c. Co. v. McClain,* 150 Ga. App. 883, supra. Although appellant "might have obtained it during the course of the investigation, the merely corroborative testimony of appellee's witnesses, when considered in connection with the evidence which was offered in support of appellant's arson defense, demonstrates only that the issue of appellant's liability on the policy was a close one which was proper for jury resolution. It did not, however, demonstrate that appellant's reliance on an arson defense, as presented and supported at trial, was without reasonable and probable cause. "It is entirely reasonable to

defend a claim where there is testimony by expert witnesses that [accidental fire] could not have been the cause of the damage suffered by the plaintiff and where the issues as to whether [an accidental fire] was shown by proof and whether it was indeed the causative factor of the damage are both extremely close . . ." *First of Ga. Ins. Co. v. Worthington,* supra, 307. Compare *Colonial Life &c. Co. v. McClain,* 150 Ga. App. 883, supra. Accordingly, appellee's evidence as to appellant's liability did not authorize a finding that the refusal to pay the demand based upon the defense asserted was undertaken in bad faith. *First of Ga. Ins. Co. v. Worthington,* supra. Compare *Colonial Life &c. Co. v. McClain,* 150 Ga. App. 883, supra. "As to the recovery of penalties, damages, and attorney fees, a refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable grounds for an insurer to contest the claim, there is no bad faith. [Cits.]" *John Hancock Mut. Life Ins. Co. v. Poss,* 154 Ga. App. 272, 279 (267 SE2d 877) (1980). "Where the issue on ultimate liability is closely contested, a finding of bad faith is generally unjustified. [Cit.]" *United Ins. Co. v. Dixon,* 143 Ga. App. 133, 134 (237 SE2d 661) (1977), overruled on other grounds, *United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 238 (248 SE2d 635) (1978).

The only other evidence asserted by appellee as sufficient to authorize a finding of appellant's bad faith in refusing to pay the demand consists of a letter, apparently never introduced into evidence at trial, from appellant to appellee mailed in response to the latter's initial demand for payment under the policy. This communication apparently was a cover letter that accompanied appellant's blank proof of loss form which was to be filled out by appellee and then returned to appellant. According to appellee's testimony, this letter from appellant stated that he "would be subject to a Federal prosecution . . . [i]f [he] sent in a false statement or form or fraud or whatever it was . . . [appellant] was trying to get [him] to do." According to appellee's brief, this letter "threatening" him with federal prosecution evidences appellant's underlying bad faith with regard to the payment of his claim. However, as is demonstrated by appellee's own testimony quoted above, appellant's letter did not "threaten" appellee with federal prosecution. The letter, in conjunction with the blank proof of loss form to be filled in and returned to appellant, merely informed appellee that he would be "subject to" federal prosecution "if" the completed proof of loss form he returned was fraudulent. Insofar as the letter did so, it appears that it was an entirely accurate statement of appellee's potential criminal liability under federal law should he return a proof of loss form containing fraudulent information. See generally *United States v. Martino,* 648 F2d 367 (5th Cir. 1981). We know of no reason why

such a letter sent with the initial blank proof of loss form would demonstrate appellant's "bad faith " in its subsequent refusal to pay according to appellee's demand. "It is never bad faith for a litigant to insist upon any right afforded to him under the law." *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746, 748 (125 SE2d 709) (1962). It would appear that appellant, faced with a demand for payment of a claim that its experts asserted was the result of arson, would have a right, as a potential litigant with regard to that claim, to insist upon the submission of a non-fraudulent proof of loss form and, to that end, apprise appellee of the potential penalties, criminal as well as civil, for failing to do so.

" '[T]he proper rule is that the judgment [for bad faith penalties and attorney's fees] should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer.' " *Colonial Life &c. Co. v. McClain,* supra, 885. Our review of the record in the instant case demonstrates no evidence which would show that appellant's reliance upon the arson defense was frivolous and unfounded and was asserted without reasonable and probable cause. Appellee failed to meet his initial burden of producing "any" evidence of appellant's "bad faith" refusal to pay the demand and, accordingly, the award of damages pursuant to OCGA § 33-4-6 (Code Ann. § 56-1206) cannot stand. *First of Ga. Ins. Co. v. Worthington,* supra. It was error to deny appellant's motion for judgment n.o.v. as to that award.

2. Appellant also enumerates as error the denial of its motion for summary judgment as to its liability for the penalties and attorney's fees provided for in OCGA § 33-4-6 (Code Ann. § 56-1206). In Division 1 of this opinion, we have reviewed the sufficiency of the evidence to support the verdict as to this issue and, pursuant to the holding therein, have reversed the denial of appellant's motion for judgment n.o.v. We will "not also review the denial of the motion for summary judgment. [Cits.]" *Drillers Service v. Moody,* 242 Ga. 123, 124 (1) (249 SE2d 607) (1978).

3. The evidence authorized the verdict as to appellee's recovery on the policy. It was not error to deny appellant's motion for new trial as to the judgment entered on that verdict.

4. Remaining enumerations of error not otherwise addressed are rendered moot by the holding in Division 1 of this opinion. "The only error in the case being the award of 'bad faith' [penalties and] attorney's fees, the judgment is affirmed with direction that the portion thereof awarding [such penalties and] attorney's fees be written off." *Ga. Intl. Life Ins. Co.. v. Harden,* supra, at 455-456.

*Judgment affirmed with direction. Shulman, C. J., and Quillian,*

*P. J., concur.*

DECIDED MARCH 9, 1983.

*Thomas C. Alexander,* for appellant.
*Tim D. Hemingway,* for appellees.